Joshua M. Wolf, OSB No. 141892
WOLF LEGAL, LLC
220 NW 8th Ave.
Portland, Oregon 97209
Telephone: 503.893.9788
Email: Josh@WolfLegalPDX.com

*Attorney for Plaintiff*
Shipoil Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SHIPOIL LIMITED,              ) | |
| ) | Case No. 3:21-cv-00139 |
| Plaintiff,     ) | |
| ) | |
| v.                            ) | **VERIFIED COMPLAINT** |
| ) | |
| M/V QING PING SHAN, IMO No.   ) | |
| 9741504, her engines, freights, apparel, ) | |
| appurtenances, tackle, etc., *in rem*,    ) | |
| ) | |
| Defendant.    ) | |

COMES NOW, Plaintiff, Shipoil Limited (hereinafter "Shipoil" or "Plaintiff"), by and through undersigned counsel, and files this Verified Complaint against the Defendant M/V QING PING SHAN, IMO No. 9741504, her engines, freights, apparel, appurtenances, tackle etc. *in rem* (hereinafter the "M/V QING PING SHAN" or "Vessel"), alleges and pleads as follows:

**I. JURISDICTION, VENUE AND PARTIES**

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This case falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and §31341 of the Commercial Instruments and

Maritime Lien Act, 46 U.S.C. §§ 31301-31343, and is brought under the provisions of Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Rule C").

2. Jurisdiction is founded on the presence within the District of the M/V QING PING SHAN, which may be arrested to enforce a maritime lien in accordance with the provisions of Rule C, as pled in Sections II & III below.

3. Plaintiff, Shipoil, was and is a foreign corporation engaged in the business of providing maritime necessaries to ships, namely bunkers and maintains an office address at 79 Lei Muk Road 22/F , Unit 7, Asia Trade Centre, Kwai Chung, New Territories, Hong Kong.

4. Defendant M/V QING PING SHAN was and is an ocean-going cargo vessel, registered in the Hong Kong Shipping Register, with IMO number 9741504, a call sign of VROK6, and, is now, or will be during the pendency of this action, within the District of Oregon, and subject to the jurisdiction and venue of this Honorable Court. Upon information and belief, the Vessel's registered owner is Oriental Fleet International Co. Ltd.

## II. THE SUBSTANTIVE CLAIMS

5. Shipoil brings this action to recover amounts due and owing to it by Defendant arising from the supply of bunkers to the Defendant M/V QING PING SHAN, pursuant to two (2) maritime contracts.

6. On or about September 10, 2019, MedMar Inc. (hereinafter "MedMar"), the charterer of the Vessel at the time, engaged Shipoil for a bunker supply delivery of 120 MT of MGO DMA 0.1% SUL to the Vessel at the Port of Singapore. *A copy of the Bunker Nomination is attached hereto as **Exhibit 1**.*

7. This Bunker Nomination provided that the payment for the supply of these bunkers is due within sixty (60) days from the date of delivery. *Id*.

8.  On or about September 16, 2019, MedMar, charterer of the Vessel at that time, engaged Shipoil for a second bunker supply delivery of 250 MT of IFO 380 CST RMG 380 and 50 MT of IFO 380 CST RMG 380 to the Vessel at the Port of Hong Kong. *A copy of the Bunker Nomination is attached hereto as **Exhibit 2***.

9.  The second Bunker Nomination provided that the payment for the supply of these bunkers is due within sixty (60) days from the date of delivery. *Id*.

10. Both the aforesaid bunker supply contracts incorporate Shipoil's General Terms and Conditions (hereinafter "Terms and Condition"). *A copy of the Terms and Conditions is attached hereto as **Exhibit 3***.

11. The bunker agreements were for the account of "Buyers", listed as follows: "Master and Owners and/or Managing Owners and/or Operators and/or Charterers and/or Buyers of QING PING SHANG and Medmar Inc." *See* **Exhibit 1**, p. 3 and **Exhibit 2**, p. 3.

12. Clause 19 of the Terms and Conditions governing the bunker supply contracts include a U.S. law and jurisdiction clause and state in relevant part:

> These General Terms and each Agreement shall be governed by the General Maritime Law of the United States and, in the event that the General Maritime Law of the United States is silent on the disputed issue, the law of the State of New York. The General Maritime Law of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action. Any disputes and claims whatsoever (whether concerning quality or quantity or payment and collection or otherwise howsoever) may be resolved, at Seller's option, in such jurisdiction as the Seller sees fit for the purpose(s) of, among others, securing any payment due to it or proceeding in the main or other proceedings in order to enforce and/or collect any claim. The Buyer agrees and acknowledges that the nature of the Agreement and of the respective business is such, to the effect that the foregoing which are set for the benefit of the Supplier, are absolutely reasonable and fully acceptable by the Buyer. . .

*See* **Exhibit 3**, Clause 19(A).

13. In accordance with the first bunker supply contract, Shipoil timely delivered the bunker fuel (118.008 mt) to the Vessel at the Port of Singapore on September 12, 2019, as recorded in the bunker delivery note. *A copy of the Bunker Delivery Note is attached hereto as **Exhibit 4***.

14. This Bunker Delivery Note bears the signature of the Vessel's Master/Chief Engineer and the seal of the Vessel. *Id*.

15. By signing the Bunker Delivery Note, the Master/Chief Engineer acted on behalf of the Vessel and her owner and/or operator and/or charterers to procure bunkers and accepted them for the Vessel. *Id*.

16. On September 12, 2019, Shipoil submitted an invoice numbered "INC00001472" for the delivery of the bunkers under the first bunker supply contract in the amount of USD 74,581.06. *A copy of this Invoice is attached hereto as **Exhibit 5***.

17. No payment for the bunkers delivered to the Vessel under the first bunker supply contract has ever been made to Shipoil.

18. In accordance with the second bunker supply contract, Shipoil timely delivered 250 MT of IFO 380 CST RMG 380 and 47.50 MT of IFO 380 CST RMG 380 of bunker fuel to the Vessel at the Port of Singapore on September 21, 2019, as recorded in the bunker delivery note. *A copy of the Bunker Delivery Note is attached hereto as **Exhibit 6***.

19. This Bunker Delivery Note bears the signature of the Vessel's Master/Chief Engineer and the seal of the Vessel. *Id*.

20. By signing the Bunker Delivery Note, the Master/Chief Engineer acted on behalf of the Vessel and her owner and/or operator and/or charterers to procure bunkers and accepted them for the Vessel. *Id*.

21.	On September 21, 2019, Shipoil submitted an invoice numbered "INC00001554" for the delivery of the bunkers under the second bunker supply contract in the amount of USD 152,915.00. *A copy of this Invoice is attached hereto as **Exhibit 7***.

22.	No payment for the bunkers delivered to the Vessel for the second bunker supply contract has ever been made to Shipoil.

23.	Despite demands to the Vessel and her owners and managers, Shipoil has not received payment for its aforesaid invoices under the first and second bunker supply contracts, which are for an aggregate principal amount of USD 227,496.06.

24.	The said bunkers delivered to the Vessel were necessary to the accomplishment of her mission; *to wit*: trade worldwide as a commercial ship. MedMar by virtue of its role as charterer was authorized to order necessaries for the account and on the credit of the Vessel.

25.	The Vessel received the benefit of the services provided by the Plaintiff and is indebted to the Plaintiff, and is obligated to pay for the aforementioned goods and services.

26.	Payment of all sums has been duly demanded by Plaintiff from the Vessel and her Owners and/or Charterers, however, to date, Defendant has failed, neglected, and/or refused to pay the outstanding aggregate sum of **USD 227,496.06**, which is indisputably due and owing for the bunkers, plus interest, costs, and fees.

### III. ALLEGATIONS IN SUPPORT OF RULE C ARREST

27.	Plaintiff repeats and re-alleges paragraphs 1-26 in the above and foregoing Verified Complaint, and for its further and additional admiralty *in rem* claims against Defendant, alleges and pleads as follows:

28.	Under Clause 19 of the Terms and Conditions governing the aforesaid contracts for the sale of bunkers to the Vessel, the laws of the United States apply to the contracts. *See*

**Exhibit 3**. Accordingly, Plaintiff may and does now seek enforcement of a maritime lien for the supply of necessaries, *i.e.* bunker fuel, under the provisions of 46 U.S.C. §§ 31341 *et seq.*

29. Plaintiff has performed all conditions precedent to warrant full and complete payment for the necessaries.

30. As a result of the failure to pay the amounts owed to Plaintiff for the bunkers supplied to the Vessel, under the terms of the Bunker Nominations and the Terms and Conditions, Plaintiff's claim for the total principal amount of **USD 227,496.06**, attaches as a maritime lien on the Vessel in favor of Plaintiff and is enforceable under the provision of 46 U.S.C. § 31341 *et seq*. with suit *in rem.*

31. Plaintiff also seeks its applicable costs, fees, and interest in this matter. It is common in Rule C arrest cases for the security to be set at one and a half (1.5) times of the fairly stated claim, and therefore Plaintiff seeks an Order of Arrest in the amount of **USD 340,000.00**. *See* Supplemental Rule E (5) (permitting substitute security up to twice the amount of Plaintiff's fairly stated claim to cover interest, costs, and fees, etc.).

32. Accordingly, Plaintiff seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A. That process in due form of law, according to the practice of this Honorable Court in cases of admiralty and maritime jurisdiction, issue against defendant M/V QING PING SHAN her engines, freights, apparel, appurtenances, tackle etc. *in rem,* including the issuance of a warrant for the arrest of the M/V QING PING SHAN, and that the said vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein;

B.     That judgment be entered in favor of Plaintiff and against the Defendant M/V QING PING SHAN *in rem*, for the amount pled herein as well as for interest, costs, attorney fees, and disbursements for this action;

C.     That the M/V QING PING SHAN, her engines, freights, apparel, appurtenances, tackle etc. *in rem*, after her arrest be condemned and sold, free and clear of all liens and encumbrances, to satisfy the judgment, and that the Court award Plaintiff out of the proceeds of the said sale, the full amount of its claim, together with interest, costs and attorney's fees;

D.     That the Court grant Plaintiff such other and further relief as may be just, equitable, and proper.

DATED this 28th day of January, 2021

                                                  WOLF LEGAL, LLC

                                                  /s/ Joshua M. Wolf
                                                  Joshua M. Wolf, OSB No. 141892

                                                  *Attorney for Plaintiff*
                                                  Shipoil Limited

OF COUNSEL

CHALOS & CO, P.C.
George M. Chalos (GC-8693)
Briton P. Sparkman (BS-5220)
(*pro hac vice applications forthcoming*)
7210 Tickner Street
Houston, Texas 77055
Telephone: (713) 574-9454
Email: gmc@chaloslaw.com
bsparkman@chaloslaw.com

Page | 7 – Verified Complaint