# EXHIBIT 3

# SHIPOIL LTD GENERAL TERMS AND CONDITIONS 2016

**UPDATED 2019**

These terms and conditions are applicable to each and every sale of marine fuel and or gas oil and or lubricants sold by SHIPOIL LIMITED, with registered office at 79 Lei Muk Road 22/F , Unit 7, Asia Trade Centre , Kwai Chung, New Territories , Hong Kong e-mail: shipoil@shipoil.com (hereinafter "Seller") to all parties purchasing the product (hereinafter together, "**Buyer**"). These terms and conditions shall override any other or different terms or conditions stipulated, incorporated or referred to by Buyer, whether in his purchase order or in any negotiation, unless otherwise agreed to in a subsequent writing.

1) **Definitions**

"Agreement" is the terms and conditions agreed between the Seller and the Buyer in respect of each delivery of Products, as same is reflected in the Confirmation complemented by these terms and conditions.

"**Buyer**", as stated above, means the person(s) or entity(ies) so identified in the Confirmation and shall include, on a joint and several basis, any agent, principal, associate, manager, partner, servant, parent, subsidiary, owner or shareholder thereof and always any Vessel to which it has been agreed for Products to be delivered and the registered owner of such Vessel.

"**Confirmation**" is the message or other document sent by the Seller to the Buyer before the delivery of the Products wherein the agreed price(s) and the main terms of the respective sale of Agreement are included, which are complimented by these terms and conditions.

"**Marine Fuel**" or "**Product**" is defined as a commercial grade of bunker fuel oil and/or marine gas oil or their mixtures offered at the time and place of delivery by Seller.

"**Physical Supplier**" is defined as the entity who physically supplies the Product to the vessel ("**Vessel**") together with that person's servants, agents, successors, sub-contractors and assigns. The Physical Supplier may be any other person or the Seller.

2) **Vessel's nomination**

**A.** Buyer shall give Seller at least five (5) days prior written notice of the scheduled date of arrival of his Vessel specifying the name of the Vessel, Vessel's agent, approximate date of arrival, bunkering port, grade and quantity of marine fuel and Buyer's address for invoicing.

**B.** Buyer shall ensure that either the master of the nominated Vessel or Vessel's agent gives not less than two (2) working days advance notice to the Seller's local office at each delivery port, which notice shall identify the Buyer and specify the place where and the time when delivery is required. The master or the Vessel's agent shall give immediate notice to Seller of any delays in time of arrival. In case of failure to arrive at the scheduled date, Seller will use his best efforts to reschedule the delivery to the Vessel but shall not be responsible for any delays or for any damages resulting therefrom.

**C.** If any nomination is given by an agent for a Buyer hereunder, then such agent shall be independently liable, as if it were the principal, for the performance of all the obligations hereunder. In any event, for the avoidance of any misunderstanding, the registered owner of the Vessel shall at all times remain unlimitedly and jointly and severally liable to the Seller for any unpaid invoices. Should the quantity requested locally exceed by ten percent (10 %) the nominated quantity in any grade, Buyer shall give Seller fax/telex authorization to supply such increased quantity.

**D**. Seller does not warrant nor shall be deemed to warrant the safety of any place (s) or facility (ies) where the Vessel loads and assumes no liability in respect thereof, except for loss or damage demonstrably caused by his failure to exercise reasonable care.

**3) Environmental protection**

If a spill occurs while marine fuels are being delivered, Buyer shall promptly take such action as it is reasonably necessary to remove the spilled marine fuels and to mitigate the effects of such spills. Buyer shall cooperate and render such assistance as is required by Seller in the course of such action.

All expenses, claims, losses, damages, liabilities and penalties shall be divided between the parties in accordance with the comparative degree of negligence. The burden of proof to show Seller's negligence shall be on the Buyer. Buyer shall give Seller all documents and other information concerning any spill, or any program for the prevention thereof, that are required by Seller or required by law or regulation applicable at the time and place of delivery.

The Seller warrants that the Physical Supplier that each time is be appointed by the Seller to effect the transaction locally complies with Marpol Annex VI regulations 14 and 18, unless otherwise advised.

**4) Quality and quantity determinations**

 **A.** Buyer shall have the responsibility for the selection and acceptance of marine fuels. The quality of each grade of marine fuel shall be the usual production quality of that grade being sold by Seller at the time and place of delivery. The Buyer shall have the responsibility for any determination of compatibility of marine fuel purchased from the Seller with marine fuel already on board the Vessel.

**B.** The quality and quantity of the marine fuel shall be determined by Seller's/Physical Supplier's personnel, using Sellers'/Physical Supplier's equipment according to Seller's/Physical Supplier's official methods, and in any case according to refinery/deposit's tickets, the custom's certificate and the bunker receipt. Buyer may be present or represented when such quality determinations and quantity measurements are taken, but whether or not Buyer or Buyer's representative accepts or declines such invitation, Seller's/Physical Supplier's determination of quality and quantity shall prevail and be binding.

**C.** Seller shall draw at least two representative sealed samples of each grade of marine fuel delivered. Buyer may attend or be represented during such sample taking in which event he shall countersign each sample and may retain one sealed and countersigned sample. The sealed samples shall be deemed conclusive and binding as to the quality of the delivered marine fuel.

 **D.** Seller or Seller's agent may inspect the Vessel in the event of any complaint, whether at the request of Buyer or otherwise. Such inspection or any analysis made in connection therewith shall be made entirely without any obligation on behalf of Seller to consider or act upon any claim or complaint by Buyer or otherwise and shall be entirely without prejudice to Seller's position.

**E.** If present at loading, Buyer or Buyer's representative shall furnish to Seller's personnel such Vessel's data as available pertaining to the accuracy of the quantity and quality determinations initially made (e.g. dryness certificate, ship's ullage before and after loading, fuel oils retained on board from tank washing or cleanage or for other reason, Vessel experience factors and sample from the cargo tanks). For the avoidance of any doubt, it is expressly hereby agreed that for the assessment of quantity, relevant survey's shall only be carried on the bunker barge (before and after completion of delivery), and in no case, under any circumstances and for whatever the reason on the receiving Vessel. This proviso/obligation shall apply and extend to any authorized surveyor, conducting a survey, in relation to any delivery of bunkers, from the bunker barge to any receiving Vessel. Notwithstanding this, if any survey is conducted on the delivered bunkers on board the receiving

Vessel, such a survey shall not, and will not in any case be taken into account by the parties, or the court, in resolving any quality or quantity dispute.

**F.** Buyer waives all claims against Seller with respect to any claimed shortage in quantity, unless Buyer or Buyer's representative shall give written notice both to the Seller's headquarters and to the Seller's ship master strictly at the time of loading. Seller shall also be notified in writing of any claimed defect in the quality immediately after such alleged defect is discovered, without prejudice to the Sellers' rights described herein. Each of the foregoing preliminary notices shall be followed by a formal written notice of claim to Seller containing all details necessary to allow evaluation of the claim. If Buyer fails to give any initial notice or if the formal written notice is not received by the Seller within the time limits provided herein, any claim shall be conclusively deemed to have been waived.

**G**. In the event that the cargo is found to be off-spec, according to the provisions of this present the parties must closely liaise and cooperate to facilitate all necessary actions in order to minimize the resulting loss to both the Vessel and the Seller/Physical Supplier. Any remedy must be expressly agreed by the parties in writing before facilitation.

**H. Claims**, if any, are to be settled separately from payment of the invoice, which, in all cases, has to be honored in full without delay.

**I**. **Time limits** : Because the Seller is frequently placed under strict time limits by its suppliers or the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers. In consequence of the Seller's strict time limits, Buyers must ensure that it maintains his own equally strict internal checking and reporting procedures. It must be clearly understood that the Seller will not relax its time limits in any circumstances.

J. **Notification** : Written notice of any claim or potential claim must be given to the Seller within the time limit specified. It is the Buyer's responsibility to ensure that notice is received by the Seller whose confirmation of receipt should always be sought. Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Seller of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the delivery of the Products.

**K. Sufficiency of Information** : To enable the Seller to investigate and pursue a claim the notice must give sufficient information for the Seller to be able to identify the relevant transaction, the nature of the complaint and the loss or damage alleged. Any notice which does not give such sufficient information will not be valid. For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Seller concerning the claim and matters relating thereto.

**L. Claim Categories** : Claims fall into 3 categories :

1. Quantity claims and disputes

2. Quality claims and disputes

3. Other claims and disputes

**Quantity Claims and Disputes** : These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an Officer of the Vessel 's crew or other senior representative of the Buyer.

For bulk deliveries, delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn. Flow meters must be checked for seals, correct settings and calibration and general condition. All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load. The delivery must be supervised at all times and care must be taken in

ensuring that all documentation is complete and accurate before signing and stamping . Any discrepancies must be recorded on the Physical Supplier's delivery receipt. Unless these procedures are followed it is nearly always impossible for a claim to be substantiated.

The Seller regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

The Seller will not accept a claim for short delivery based upon figures obtained by measuring Product in the Vessel's tanks.

The time limit for receipt by the Seller of notice of a quantity dispute is 7 ( seven )days from the date of delivery or such shorter period as is specified in the respective Confirmation.

**Quality Claims and Disputes** : It is the Buyer's responsibility to ensure that the Products tendered for delivery are those which are required by the Vessel and are delivered into the correct tanks.

Two representative samples of every consignment and load of the delivery must be taken as delivery proceeds. The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other senior representative of the Buyer. One set of samples must be retained by the Buyer, and the other by the Physical Supplier.

As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier's delivery receipt before signing and stamping. In the event of the Buyer having grounds to believe that the Product supplied does not accord with the relevant description in the Confirmation or is defective, the Buyer shall immediately :

> 1. take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product

> 2. give notice with full details of the possibly defective or incorrect Product to the Seller together with the Vessel's position, destination and ETA ; the quantities and locations of all bunkers on board the Vessel ; the rate and quantity of consumption since delivery and the location immediately prior to consumption of bunkers consumed ; for each of the three preceding deliveries to the Vessel, the quantity and specifications of Product supplied the place and date of supply and the name of the supplier ;

> 3. inform the Seller of the whereabouts of the Buyer's set of samples.

It is a pre-condition of the Seller being prepared to consider any quality claim that at the time notice is given, the Buyer retained its complete set of sealed samples and is prepared to have them analyzed by a reputable independent testing laboratory, approved by the Seller, in accordance with established procedures in the presence of a representative of the Seller. However, unless otherwise agreed to in writing by the Seller and the Buyer, it is the Physical Supplier's samples and sample analyses that shall be binding upon the parties hereto.

If it is alleged that any equipment or machinery has been damaged by defective Product full details must be given to the Seller at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Seller or its representative.

The time limit for receipt by the Seller of notice of a quality claim is 7 ( seven ) days from the date of delivery or such shorter period as is specified in the Confirmation.

**Other Claims and Disputes :** Notice of all other claims, specifically excluding any and all claims relating to or associated with those relating to matters of quantity or quality which are subject to the time limits set out

above, should be given to the Seller as soon as reasonably possible and in any event no later than 28 days after delivery. If the Confirmation provides for a shorter period such shorter period shall apply.

**Summary of Time Limits** :

    Quantity claims and disputes 7 days

    Quality claims and disputes 7 days

    Other claims and disputes 28 days

all subject to the provision of shorter time limits in the Confirmation.


**5) Delivery**

**A.** Seller will do his best to bunker the Vessel as promptly as possible, but shall bear no liability for any demurrage, detention or any other damage due to any delay beyond his force, including but not limited to delay caused by weather (whether usual or unusual), congestion at the terminal or prior commitments of available barges or existing facilities, howsoever caused.

**B.** Buyer shall without charge immediately furnish clear and safe berth alongside Vessel's receiving lines and shall render all other necessary assistance to the barge effecting delivery on 24 hours per day basis.

**C.** Buyer shall make all connections and disconnections between the delivery hose and Vessel's intake pipe, or furnish steam, if necessary, and provide sufficient tankage equipment to receive promptly all deliveries.

**D.** Seller shall in no event be liable for any damage, demurrage, detention or delays resulting from causes beyond his control or avoidable by due care on the part of the Buyer or the Vessel.

**E.** The delivery shall be made during normal working hours unless required and available at other times (holidays, Saturdays and Sundays) and permitted by port regulations, in which event Buyer shall reimburse Seller for any and all additional expenses incurred in connection therewith, including overtime.

**F.** All deliveries shall be deemed complete and title and risk of loss shall pass to Buyer when the marine fuel has passed the flange connecting the delivery facilities provided by Seller. Thereafter, Seller shall in no event be responsible nor liable for any loss or damage.

**G.** Buyer shall indemnify Seller against any and all damages and liabilities arising out of or resulting from any act(s) or omission(s) of Buyer, his servants, agents, Vessel's officers or Vessel's crew in connection with marine fuel delivery. Indemnification shall include all costs, reasonable attorney's fees and other damages, including, but not limited to, the cost of compelling Buyer to fully discharge all its obligations.

**H.** If Buyer, his agents, servants, Vessel's officers or Vessel's crew cause any delay to Seller's facilities in effectuating deliveries of fuel oils, Buyer shall pay demurrage to Seller at Seller's established rates and reimburse Seller for any and all other expenses in connection therewith. The Seller's demurrage rate is hereby expressly agreed at the sum of four hundred U.S Dollars per hour ($400/hour).

**6) Price**

**A.** Price will be that which has been agreed between Buyer and Seller at the time of concluding the contract and confirmed in writing by Seller and will be valid for deliveries at the agreed dates.

**B.** Price excludes any local government duties or taxes that may be levied. Such duties or taxes, if any, shall be paid in addition to stipulated price.

**C. Unit Price:** Where in the Confirmation the Unit Price is stated to be not subject to variation the Unit Price will, not be varied. In all other cases having agreed the Unit Price of the Product the Seller will endeavour to refrain from making any increase. However, the cost of marine bunkering products is volatile and the Seller therefore reserves the right to increase the Unit price at any time before delivery. Notice of the increase will be given during Greek normal business hours (Monday to Friday inclusive, 08:00- 18:00 Athens time). Notice given outside these hours will be deemed to have been given at 08:00 on the first business day thereafter. In such event the Buyer may forthwith give written notice to the Seller of cancellation of the Agreement. If no such notice is received within one hour of the Seller advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed to have agreed to the revised Unit Price and the Agreement so revised shall remain in full force and effect.

**D) Further Costs:**

In addition to the Basic Cost of the Product the Buyer agrees to pay for any charges raised in respect of taxes, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues and any and all other like costs and expenses incurred by or charged to the Seller as and when they are advised to the Seller and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Seller for the Product supplied.

**E) Notice of the Price:**

The Seller will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery. In certain circumstances the Seller will give notice of the Price in installments. Where notification of the Price is given in installments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Seller. Notice of the Price may at the Seller's option be provided by invoice sent by post or email or as otherwise provided herein or as agreed.

**F. Proof of Delivery:** The Buyer or his representative should attend delivery and obtain at that time all outstanding information relating to delivery including the exact quantities and precise specification of Product delivered. Unless otherwise requested by the Buyer prior to dispatch by the Seller of the Confirmation the Seller shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel. It is expressly agreed that the furnishing by the Seller of proof of delivery is not a prerequisite to payment of the Price.

**7) Payment**

**A.** Buyer shall effect payment (without any deduction, discount or setoff whatsoever) in U.S Dollars (US$) to Seller's account at a bank designated by Seller. Payment shall be deemed to have been effected on the date when full amount of Seller's invoice is credited to Seller's account. Buyer may not at any time or for any reason whatsoever assert a setoff or invoke any counterclaim or other right as a basis for withholding payment.

**B.** When marine fuel is supplied on a credit basis, full payment shall be received by the due date specified in Seller's fax/email invoice. If the established credit period expires on a Saturday or a Sunday, the Buyer shall arrange payment on the Friday, or on the immediately preceding day when banks are open. Seller will in due course provide Buyer by ordinary mail with a commercial invoice and a copy of the bunker receipt.

**C.** Seller's fax/email invoice shall be based on advice as to the quantity delivered and of other charges and surcharges if incurred and payment made pursuant to (a) above shall be subject to such subsequent adjustment as may be necessary on receipt by the Seller of further delivery details.

**D.** If Products are supplied on a credit basis and full payment is not received by the due date as per Seller's invoice, Buyer shall immediately be in default. A service charge of 2% pro rata monthly will be assessed on all

late payments and shall be payable as subsequently directed by Seller. This shall be in addition to any other remedies which Seller may take by reason of such default.

**E.** If Buyer is in default of full payment, if his financial condition in the Seller's opinion becomes impaired, or if proceedings in bankruptcy or insolvency are instituted by and or against Buyer, or in the case of liquidation or dissolution of Buyer, any and all postponed or deferred payments including interest thereon, shall become immediately due and payable and Seller reserves the right to offset same against debts to Buyer or his affiliates. Vessel's registered owners are the final responsible for payment in case of default by Buyers.

**F.** Ownership of bunkers. It is well understood that the Seller remains the sole owner of the bunkers supplied until full payment of the relevant bunker invoice is fully received by its bankers.

**8) Force majeure**

No failure or omission by the Seller or the Buyer to carry out or observe any of these conditions shall give the right to rise any claims against that party or be deemed to be a breach of these conditions if the same shall arise out of causes not reasonably within the control of that party, whether or not foreseen, including (but not limited to) such causes as labor disputes, strikes, governmental intervention, the Seller's response to the insistence or request of any governmental body or person purporting therefore, war, civil commotion, fire, flood, accident, storm, earthquake or any act of god. This provision however does not excuse the Buyer from his obligation to make payment for all amounts due to the Seller on account of marine fuel previously delivered hereunder.

**9) Notices**

Unless otherwise provided, all notices, statements and other communications, including invoices to be given, submitted or made hereunder by either party to the other, shall be sufficiently given in writing and sent by post or by telegraph, fax/telex or cable to the address designated by Buyer for invoicing or to the address designated by Seller. Either party may change its designated address by giving fifteen (15) days prior written notice of its address to the other party.

**10) Cancellation and breach**

In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product, the Seller shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit. The Seller may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate.

**11) Liens**

 In addition and without prejudice to any other rights and remedies of the Seller, it is hereby expressly agreed that the Products are supplied upon the faith and credit of the Vessel. It is also agreed and acknowledged that a maritime lien over the Vessel is thereby created for the Price and all other monies payable in respect to the Agreement and that the Seller, in agreeing to deliver the Products to the Vessel, does so relying upon the faith and credit of the Vessel and such maritime lien. The Buyer, if not the registered owner of the Vessel, hereby expressly warrants that it has the authority of the registered owner to pledge the Vessel's credit as aforesaid and that it has given clear notice of the provisions of this clause to the registered owner. The Seller shall not be bound by any attempt (by any person or entity) to restrict, limit or prohibit its lien or liens attaching to the Vessel, either by clausing or otherwise annotating the delivery receipt, or otherwise howsoever.

**12) Waiver**

The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement. In particular, the granting by the Seller of any additional time to make payment or the waiving or reducing of any financial or other charge shall not prevent the Seller at any time thereafter from relying upon its strict contractual rights.

### 13) Indemnity

The Buyer hereby indemnifies the Seller in respect of all damage or injury occurring to any person or to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extend that the same shall have been occasioned by the negligence or default of the Buyer, his servants or agents or any third party in the course of performance of or arising out of the Agreement.

### 14) Liability

To the extent permitted by Law the Seller shall not be liable to the Buyer for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Seller, its servants, agents or sub-contractors.

### 15) Compensation

Notwithstanding the foregoing, in the event that the Seller is found to be liable to the Buyer, the total amount payable by way of compensation other that in respect of personal injury or death shall not exceed the price charged to the Buyer for the Product supplied under the Agreement. It is a pre-condition to the payment of any compensation by the Seller that all sums standing due to the Seller from the Buyer are first paid and settled.

### 16) Insurance

The Buyer is responsible for effecting and maintaining in force adequate insurance which will fully protect the Buyer, the Seller and all third parties from all risks, hazards and perils associated with or arising from the Agreement and delivery.

### 17) Licenses

The Buyer is responsible for obtaining all necessary permits, licenses and approvals required to enable both parties to execute all of their obligations under the Agreement.

### 18) Good practice

The Buyer shall, in addition to observing and complying with the terms of the Agreement, abide by generally accepted good operating practices.

### 19) Governing Law and Jurisdiction

**A.** These General Terms and each Agreement shall be governed by the General Maritime Law of the United States and, in the event that the General Maritime Law of the United States is silent on the disputed issue, the law of the State of New York. The General Maritime Law of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action. Any disputes and claims whatsoever (whether concerning quality or quantity or payment and collection or otherwise howsoever) may be resolved, at Seller's option, in such jurisdiction as the Seller sees fit for the purpose(s) of, among others, securing any payment due to it or proceeding in the main or other proceedings in order to enforce and/or collect any claim. The Buyer agrees and acknowledges that the nature of the Agreement and of the respective business is such, to the effect that the foregoing which are set for the benefit of the Supplier, are absolutely reasonable and fully acceptable by the Buyer. Each of the parties hereby irrevocably submits to the jurisdiction of any such Court, and irrevocably waives, to the fullest extent it may effectively do so, the

defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such Court. The Seller shall also be entitled to assert its rights of lien or attachment or other rights, whether in Law, in equity or otherwise, in any country where it arrests or otherwise detains the Vessel**.** Each of the Buyer and the Seller hereby waive any right either of them might have to a trial by jury in any legal proceeding arising from or related to these General Terms or any Agreement.

**B.** These Terms and Conditions together with the Confirmation constitute the entire Agreement. No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Seller. If any provision of the Agreement shall, to any extent, be invalid or unenforceable the remainder of the Agreement shall not be affected thereby remaining in full force and effect.